USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/20/2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QT TRADING, LP,

                Plaintiff,

- against -

M/V PACIFIC DESTINY, et al.,

                Defendants.

REPORT AND
RECOMMENDATION

10 Civ. 0118 (RMB) (RLE)

To the HONORABLE RICHARD M. BERMAN, U.S.D.J.:

## I. INTRODUCTION

This matter was referred for an inquest on damages following an entry of default judgment against Defendant Samyoung America, Inc. ("Samyoung") by the Honorable Richard M. Berman on May 17, 2010. Plaintiff QT Trading, LP ("QT") submitted affidavits in support of damages on July 29, 2010, and Samyoung failed to respond. Based on the following facts submitted to the Court by way of affidavits and a memorandum of law by QT, the Court recommends QT be awarded **$1,011,796.04**.

## II. BACKGROUND

In February of 2009, QT contracted with Defendants Samyoung, Cape Denison Schiffahrts GMBH & Co. KG, Konig & Cie. GMBH & Co. KG, Columbia Shipmanagement (Deutschland) GMBH, Swire Shipping Ltd., and M/V Pacific Destiny ("the Vessel") for the shipment of 1346.052 metric tons of steel pipes from Mumbai, India, to Houston, Texas. (Am. Compl. ¶ 10.) Defendants are the Vessel on which the pipes were shipped and common carriers who owned, operated, controlled, managed, chartered, or issued bills of lading for the carriage of goods aboard the Vessel. QT purchased the pipes from an Indian manufacturer, Swastik Pipes

Ltd. (Aff. of Andrew Pearl ("Pearl Aff."), Ex. 1, July 28, 2010), and had contracted to sell the pipes to a customer, Pipe Exchange. (*Id.*, Ex. 3.) Samyoung, a non-vessel owning common carrier ("NVOCC") gave QT a clean bill of lading for the shipment.[1] (Pl.'s Mem. in Supp. of the Determination of Damages ("Pl.'s Mem."), Ex. 1.) When they arrived in Houston, the pipes were found to be physically damaged, either by contact with seawater or chemical contamination. (*Id.* ¶ 11.) As a result of the damage, Pipe Exchange rejected the pipes. (Pearl Aff., Ex. 7.) QT sold the pipes in a salvage auction (*Id.*, Ex. 8), and submitted a claim to their insurance broker, Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher"). (Aff. of Albert S. Loser ("Loser Aff.") ¶ 5, July 28, 2010.) On September 16, 2010, Gallagher issued a check to QT in settlement of the claim, and in exchange, on September 21, 2010, QT signed a subrogation agreement assigning its rights to recovery against the carriers and the Vessel to its insurance company, Fortis Corporate Insurance N.V. (now Amlin Corporate Insurance). (Loser Aff., ¶ 10.)

On January 7, 2010, QT filed suit against the Vessel, Samyoung, and various owners and operators of the Vessel. Samyoung was served with the original Complaint on January 20, 2010. QT filed an Amended Complaint on February 5, 2010 and served Samyoung on March 9, 2010. On April 29, 2010, Judge Berman ordered Samyoung to show cause why a default judgment should not be entered against it. Samyoung never responded to either Complaint or to the Order to Show Cause, and on May 17, 2010, Judge Berman entered a default judgment in favor of QT against Samyoung. On July 15, 2010, QT and the remaining Defendants submitted a stipulation that the determination of damages against Samyoung would have no preclusive or binding effect

---

[1] A clean bill of lading generally indicates that a shipper delivered cargo to a carrier in good condition and order.

2

on the rights and liabilities of the remaining Defendants.

### III. DISCUSSION

**A. Samyoung's Liability Under COGSA**

This case is governed by the Carriage of Goods by Sea Act ("COGSA" or "the Act"), 46 U.S.C.A. § 30701, which covers bills of lading for the carriage of goods to or from U.S. ports. Under COGSA, an NVOCC is "a common carrier that– (A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier." 46 U.S.C.A. § 40102. NVOCCs act as intermediaries between shippers and carriers, issuing a bill of lading to shippers and then arranging shipment of goods with a carrier. *See Scholastic Inc. v. M/V KITANO*, 362 F. Supp. 2d 449, 455 (S.D.N.Y. 2005). "It is from the bill of lading - the NVOCC's contract with the shipper - that its liability to the shipper for its cargo derives." *Id.* at 455-56.

Sections 1303 and 1304 of COGSA lay out a burden-shifting process for litigants seeking relief under the Act. *See* 46 U.S.C.A. §§ 1303-04; *Sun Co., Inc. v. S.S. OVERSEAS ARCTIC*, 27 F.3d 1104, 1109 (5th Cir. 1994.) The plaintiff shipper establishes "a prima facie case by proving both delivery of the goods to the carrier in good condition and outturn by the carrier in damaged condition." *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1373 (5th Cir. 1979). "Ordinarily a clean bill of lading supports a prima facie case that plaintiff delivered goods to defendant in good condition." *American Home Assur. Co. v. ZIM JAMAICA*, 296 F. Supp. 2d 494, 500 (S.D.N.Y. 2003). Once the plaintiff has met this threshold, the defendant carrier must prove that the damage falls within one of the exceptions listed in § 4(2) of COGSA, *Nitram*, 599 F.2d at 1373, or the availability of other affirmative defenses, including COGSA's package limitation under § 4(5). *See Servicios-Expoarma, C.A. v. Industrial Maritime Carriers, Inc.*, 135 F.3d 984 (5th Cir.

3

1998). *See also Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam, et al.*, 759 F.2d 1006, 1009 (2d Cir. 1985) (recognizing COGSA's package limitation as an affirmative defense). "Once a COGSA exception is established, the burden then returns to the shipper or consignee to 'show that there were . . . concurrent causes of loss in the fault and neglect of the carrier.'" *Vana Trading Co., Inc. v. S.S. Mette Skou*, 556 F.2d 100 (2d Cir. 1977) (quoting *J. Gerber & Co. v. S.S. Sabine Howaldt*, 437 F.2d 580, 588 (2d Cir. 1971)). Finally, the burden shifts back to the carrier to establish what portion of the loss is attributable to other causes, or else bear the entire loss. *M. Golodetz Export Corp. v. S/S Lake Anja*, 751 F.2d 1103 (2d Cir. 1985).

Following a default judgment, all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true. *See Cotton v. Stone*, 4 F.3d 176, 181 (2d Cir. 1993) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)). In its Amended Complaint, QT pleaded sufficient facts to establish a *prima facie* case under COGSA. (*See* Am. Compl. ¶¶ 10-11.) Samyoung has failed to assert any affirmative defenses, including COGSA's package limitation, and has failed to offer any evidence regarding the attribution of damages among the various parties. As a result, following the precedent established by *Binladen* and *Golodetz*, Samyoung is liable for the full amount of damages established by QT.

### B. Amount of Damages

QT alleges damages in the amount of $1,011,796.04, which is the total adjusted loss determined by Gallagher, and paid in the insurance settlement. (Loser Aff. ¶ 7.) This number was determined by first calculating the insured value of the pipes - the selling price plus ten percent - a total of $1,707,497.88. (*Id.*) Freight, storage, and handling fees, plus the cost of a surveyor to assess the damages were added to that total, to reach a sum of $1,749,061.29. (*Id.*) The salvage value of the pipes, $737,265.25, was subtracted to reach the total adjusted loss. (*Id.*)

QT has submitted evidence verifying the way in which value is calculated according to its insurance policy, the selling price of the pipes, the freight, storage, handling, and surveyor fees, and the amount earned at the salvage sale. (*See generally* Loser Aff., Pearl Aff.) Samyoung has not submitted any evidence to challenge the numbers submitted by QT, and they appear to be in order.

## IV. CONCLUSION

Based on the evidence presented and applicable case law, this Court respectfully recommends that QT be awarded **$1,011,796.04**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. §636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

Dated: October 20, 2010
New York, New York

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

5

Copies of this Report and Recommendation were sent to:

Counsel for Plaintiff
Dana Keith Martin
Hill Rivkins LLP
55 Waugh Drive, Suite 1200
Houston, TX 77007


Justin Matthew Heilig
Hill, Rivkins & Hayden LLP
45 Broadway, Suite 1500
NY, NY 10006

Counsel for Defendants Cape Denison Schiffahrts GmbH & Co. KG, König & Cie. GmbH & Co. KG, and Columbia Shipmanagement (Deutschland) GmbH
Richard Anthony Branca
Royston, Rayzor, Vickery & Williams, LLP
711 Louisiana Street, Suite 500
Houston, TX 77002-2716

David R. Walker
Royston Rayzor Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, TX 77002-2716

Counsel for Defendant Swire Shipping Ltd.
Richard Vaughan Singleton, II
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174